IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 22 CR 15-2 |
| | ) | |
| v. | ) | Honorable Manish S. Shah |
| | ) | |
| DAVID SARGENT, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT SARGENT'S REPLY IN SUPPORT OF HIS POST-TRIAL
<u>MOTIONS</u>**

Christopher T. Grohman
Benesch Friedlander Coplan and Aronoff
71 S. Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4943
Email:    cgrohman@beneschlaw.com

Carly Chocron
Taft Stettinius & Hollister LLP
111 East Wacker Drive, Suite 2600
Chicago, IL 60601
Telephone: (312) 836-4158
Email:    cchocron@taftlaw.com
Counsel for David Sargent

Table of Contents

ARGUMENT ........................................................................................... 1

1. The Alleged Co-Conspirator Statements Were Improperly Admitted ...... 1

2. Even Considering All of the Evidence in the Government's Case-in-Chief, No Rational Jury Could Convict Sargent Beyond a Reasonable Doubt Based on the Government's Purely Circumstantial and Speculative Evidence ............................................................................................. 2

   a. The Court Should Grant Sargent's Motion for Judgment of Acquittal Pursuant to Fed. R. Crim. P. 29 ............................................................. 2

   b. In the Alternative, Given that the Manifest Weight of the Evidence Favors Sargent, The Court Should Grant A New Trial Pursuant to Fed. R. Crim. P. 33 ........................................................................................ 8

3. The Verdicts Were Inconsistent and The Court Should Act .................... 10

4. The Government's Cross Examination and Argument About Defendant Sargent's Failure to Perform Research Into the "Riskiness" of his Chegg Trades Was an Impermissibly Commented on Right to Remain Silent, Requiring a New Trial ............................................................................. 12

5. Venue Was Improper ............................................................................. 14

Conclusion ............................................................................................. 16

# TABLE OF AUTHORITIES

Page(s)

Cases

*Coleman v. Johnson*,
  566 U.S. ——, ——, 132 S.Ct. 2060, 182 L.Ed.2d 978 (2012) ................. 2, 3

*SEC v. Clark*,
  60 F.4th 807 (4th Cir. 2023) ................................................................ 6, 7

*United States v. Allen*,
  383 F.3d 644 (7th Cir. 2004) ....................................................................2

*United States v. Alston*,
  974 F.2d 1206 (9th Cir. 1992) ..................................................................8

*United States v. Brandon*,
  50 F.3d 464 (7th Cir.1995) ..................................................................... 15

*United States v. Chan*,
  981 F.3d 39 (1st Cir. 2020) ................................................................. 6, 7

*United States v. Evans*,
  486 F.3d 315 (7th Cir. 2007) ................................................................ 12

*United States v. Indelicato*,
  611 F.2d 376 (1st Cir.1979) .....................................................................8

*United States v. John*,
  518 F.2d 705 (7th Cir.1975) ................................................................. 15

*United States v. Kelly*,
  991 F.3d 1308 (7th Cir. 1993) .............................................................. 14

*United States v. Knox*,
  540 F.3d 708 (7th Cir. 2008) ........................................................... 14, 15

*United States v. Lawrence*,
  555 F.3d 1254 (6th Cir. 2009) .............................................................. 12

*United States v. Lincoln*,
  630 F.2d 1313 (8th Cir. 1980) ..................................................................8

*United States v. Pisman,*
   443 F.3d 912 (7th Cir. 2006)............................................................................ 10

*United States v. Powell,*
   469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984) .................................... 10

*United States v. Ringer,*
   300 F.3d 788 (7th Cir. 2002).............................................................................. 15

*United States v. Tingle,*
   183 F.3d 719 (7th Cir. 1999)...................................................................... 14, 16

*United States v. Washington,*
   184 F.3d 653 (7th Cir. 1999)......................................................................... 8, 9

## Court Rules

Fed. R. Crim. P. 12(b)(3)(A)(i) .............................................................................. 14

Fed. R. Crim. P. 29..................................................................................................2

Fed. R. Crim. P. 33..................................................................................................8

# ARGUMENT

1. **The Alleged Co-Conspirator Statements Were Improperly Admitted**

   As an initial matter, the government argues that Sargent failed to raise this issue because he never objected to their admission pretrial. This is incorrect. Co-defendant Klundt filed a written objection to the motion on behalf of both defendants. R. 62. Counsel made it clear at the pretrial conference that it was a joint defense, that counsel had split up the work of filing various motions, and that all motions were joint.

   Next, the government argues that Sargent waived this issue by failing to object at the close of the government's case. Again, the government is mistaken. The government fails to cite any rule or case that says that this is a requirement. Further, at the close of the government's case, Defendants orally moved for a judgment of acquittal, specifically citing the same cases they raised in their motion opposing the admission of the co-conspirator statements, arguing that the purely circumstantial nature of the evidence was insufficient to prove a conspiracy. R. 90 at 792-800.

   Last, the government argues all the statements that it admitted pursuant to its *Santiago* proffer were independently admissible. If so, then why file a *Santiago* proffer? Many of these statements, specifically those by Klundt, were hearsay and came in without any limiting instruction.

2. **Even Considering All of the Evidence in the Government's Case-in-Chief, No Rational Jury Could Convict Sargent Beyond a Reasonable Doubt Based on the Government's Purely Circumstantial and Speculative Evidence**

    a. **The Court Should Grant Sargent's Motion for Judgment of Acquittal Pursuant to Fed. R. Crim. P. 29**

In its response, the government accuses Sargent of evaluating each piece of evidence individually rather than as a whole. Quite the opposite, that is what the government is doing. The government's response goes through the evidence one item at a time, each piece of which is circumstantial, and argues with respect to each piece that the jury "could have concluded" something in the government's favor with respect to that particular piece of evidence. R. 105 at 27-30. However, as Sargent pointed out in his opening brief, given that each piece of evidence was open to multiple interpretations, the jury could have inferred a favorable interpretation for the government on individual pieces of circumstantial evidence, and therefore the evidence as a whole was insufficient evidence for them to infer guilt on the ultimate elements of the charged crimes. While a jury may make reasonable inferences of fact, any inferences going directly to the elements of the crime must be proved, even inferentially, beyond a reasonable doubt. *United States v. Allen,* 383 F.3d 644, 647 (7th Cir. 2004). Each step in the inferential chain must be supported by evidence that allows the jury to "draw reasonable inferences from basic facts to ultimate facts." *Coleman v. Johnson,* 566 U.S. ——, ——, 132 S.Ct. 2060, 2064, 182 L.Ed.2d

978 (2012). Here, while basic facts may be inferred in the government's favor, the government essentially asked the jury to infer ultimate elements of the crime, such as whether Klundt knew that Sargent was going to trade in Chegg stock, without a single shred of direct evidence. That is not allowed – even if every inference the government asked the jury to draw was reasonable, the evidence as a whole remains purely circumstantial and insufficient to show guilt beyond a reasonable doubt.

The government shockingly retorts that "[a]lmost every aspect of the charges was proved through overwhelming, uncontested, direct evidence." R. 105 at 29. It is possible that the government simply misapprehends the difference between direct and circumstantial evidence. The government cites some fairly minor points that were proved through direct evidence, such as the fact that the alleged crime was committed through the use of the internet. But with respect to the main elements of the crime that the government had to prove, such as whether Klundt tipped Sargent on May 1, whether the tipped information was material, and whether Klundt knew that Sargent planned to trade in Chegg stock (despite Klundt's testimony otherwise, *see* R. 91 at 880), there is virtually no evidence other than rank speculation.

It is worth examining some of the evidence that the government points to in its response. First, the government finds especially incriminating that on April 21, 2020, Sargent placed a small limit order for Chegg stock at $35.15

3

per share price, but then was willing to pay a higher price for Chegg stock and options on May 1. R. 105 at 23. The government asked the jury, and now asks the Court, to infer based on the circumstantial timing of these events that Klundt must have tipped Sargent on May 1, causing him to be willing to pay a higher price for Chegg. *Id.* However, what does the direct evidence show? The direct evidence, by way of the testimony of David Primer, the person who spoke with Sargent and placed the trades, shows that on April 21, after Sargent placed the limit order, Primer, Sargent's financial advisor, told Sargent to wait until May 1 to trade in Chegg. R. 89 at 637-638, 658, 675. Primer told Sargent that he thought that the price of the options would decrease between April 21 and May 1 due to "time decay" and thus it would be cheaper to purchase them on May 1. R. 89 at 637-38. Primer also testified that Sargent had already made the decision to buy Chegg stock during that April 21 call and waited to do so until May 1 based only on Primer's advice. *Id.*

The government retorts that the timing of the May 1 calls themselves are suspicious because Sargent waited not only until after talking to Primer to trade but also after waiting to talk to Klundt before executing the Chegg trades. R. 105 at 24. Again, the government ignores the direct evidence. First, Primer testified that he wanted to wait until the end of the day to execute the trades because, again, he assumed they would get cheaper as market close approached. R. 89 at 637-38. Second, it was Primer who conducted the trades,

4

not Sargent – there was no evidence adduced at trial that Sargent was the one who waited until the end of the day to trade; it was Primer conducting the trades, he had authorization to do so during the morning call, and he, not Sargent, was the one that waited; Sargent did not tell him to wait. R. 89 at 638-39, 658.

Next, the government finds it suspicious that Sargent went "all in" on Chegg despite the fact that he and his wife only had an annual income in the low six figures. R. 105 at 25. This neglects to take into account the facts that: (1) Sargent had given Primer $54,000 to trade on VIX options (R. 89 at 665); (2) Sargent and his wife had assets in the seven figures (R. 92 at 990-94, 996-97); and, (3) Sargent and his wife had income generating rental properties, where the rental income was attributed and reinvested into the properties. *Id.*

Third, the government notes the fact that Chegg stock rose 20 percent after the May 4 earnings call. R. 105 at 10. The objective undisputed data shows this is not usual. R. 93 at 1145-46; R. 101 at Exh 3. The median increase (also taking into account decreases) of Chegg stock after an earnings call between October 30, 2017 and May 4, 2020 was 8.2%. R. 101 at Exh 3. Further, there was no correlation at all between an earnings increase and an increase in the stock price; sometimes earnings went down after an earnings call and the stock price decreased. *Id.* And even if Sargent were to lose money on this,

5

he was not expected to lose anywhere near his whole investment. R. 89 at 593-601; R. 93 at 1140-45; R. 101-3.

Last, the government relies on *United States v. Chan*, 981 F.3d 39 (1st Cir. 2020) and *SEC v. Clark*, 60 F.4th 807 (4th Cir. 2023) to argue that the evidence was sufficient to convict Sargent. *Chan* has virtually no comparison to the present case. In *Chan*, there were two defendants, both statisticians at different pharmaceutical companies, who were subject to three-day trading blackout periods before the results of certain studies were released. The trial evidence – consisting of among other things the fact that one defendant withdrew cash and the other defendant deposited cash in similar amounts on the same day, and the other defendant lied about his friendship with the co-defendant to the FBI during multiple in person interviews – showed that the defendants conspired to avoid these blackout periods by having each other trade in each other's companies stock, which they had regularly purchased themselves other than during the blackout period. More importantly, *Chan* is of limited precedential value because the defendants did not challenge the sufficiency of the evidence with respect to their conspiracy convictions on appeal. *Chan*, 981 F.3d at 57 ("The defendants don't attack the conspiracy conviction in a conventional "there isn't enough evidence to support my conviction" manner. Instead, they frame their challenge as an impermissible variance from the allegations in the SSI."). With respect to the substantive

securities fraud convictions, the only challenge defendants mounted on appeal was the lack of evidence that "they possessed MNPI about the relevant clinical trials at their respective companies close in time to the records of communication between them and their securities-trading activities." *Id.* Given the narrow challenge the defendants mounted on appeal, attempting to analogize *Chan* to this case is misleading.

Moreover, the Seventh Circuit has neither adopted nor endorsed the six-factor test outlined in *Chan*. Even if these factors were to be applied in this case, "all of the factors" do not occur in the government's favor. First, the "attempts to conceal either the trades or the relationship between the tipper and the tippee" are non-existent in Sargent's case. Sargent did nothing to put the trade in someone else's name or disguise the trade in any way. His long-term relationship with Klundt is broadcast all over LinkedIn and NBC. Further, the "pattern of trades" also does not favor the government given Sargent's many other trades in Chegg stock led to losses. Moreover, the government had far more evidence against the *Chan* defendants, including the movement of cash between their bank accounts and multiple false statements, than is present in this case.

*Clark* is easily distinguishable because it is a civil case, evaluated under a much lower standard of proof, so it is of exactly zero value in this case.

For these reasons and the reasons argued in Sargent's opening brief, the Court should grant Sargent's Rule 29 motion for judgment of acquittal.

    b.    In the Alternative, Given that the Manifest Weight of the Evidence Favors Sargent, The Court Should Grant A New Trial Pursuant to Fed. R. Crim. P. 33

A major premise of the government's response is that this Court should not substitute its credibility determinations for that of the jury's when deciding Sargent's Rule 33 motion. To the contrary, the Seventh and other Circuits have been clear that a trial court can and should make its own credibility determinations in the context of deciding a Rule 33 motion. *See United States v. Washington*, 184 F.3d 653 (7th Cir. 1999) citing Wright, 3 FED. PRAC. & PROC. CRIM.2D § 553 (1982); *United States v. Alston*, 974 F.2d 1206, 1212 (9th Cir. 1992). "The district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." *United States v. Lincoln,* 630 F.2d 1313, 1319 (8th Cir. 1980); accord *United States v. Indelicato,* 611 F.2d 376, 387 (1st Cir.1979). "If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." *Lincoln,* 630 F.2d at 1319.

At most, the cases the government cited potentially stand for the proposition that the Court's credibility determinations in and of themselves may not be reason enough to grant Sargent a new trial (although this is far from clear given the *Washington* decision, supra). Here, however, there are plus factors above and beyond the Court's decision on witness credibility. First, the *direct* evidence in this case clearly preponderates in Sargent's favor. Second, there is no doubt this case involved inconsistent verdicts between Sargent, who exercised his right to remain silent, and Klundt, who testified.

This case is a *sui genris* one, in which a defendant is not asking the Court to make negative credibility determinations with respect to favorable prosecution witnesses, but rather asking the Court to make a favorable credibility determination with respect to the only prosecution witness offering direct evidence (Primer) and also with respect to Defendant Klundt's testimony. If Primer were to be found credible, the Court would have to assume: (1) it was Primer who decided the mix of trades and therefore their riskiness (R. 89 at 638-39, 675-76); (2) the trades were not that risky (R. 89 at 646); (3) Primer decided the timing of the trades (R. 89 at 637-38, 658, 675); (4) Sargent wanted to trade in Chegg not because he had insider information, but rather because he thought an online education company would do well during COVID (R. 89 at 654-55; R. 90 at 696, 701-02); and, (5) Sargent was ready to execute these trades in mid-April, long before he could have had insider

9

information, but Primer talked him into waiting closer to the options' expiration date. R. 89 at 632, 637-38, 644, 654, 658, 675; R. 90 at 704. Finding Primer credible guts the prosecution's case.

In its response, the government does not contend that the Court is unable to make credibility determinations with respect to defense witnesses when rendering its Rule 33 decision. Rather, the government devotes many pages to arguing that Klundt's testimony was incredible. That will be for the Court to decide, but it is worth noting: (1) given the verdict, the jury must have believed him; and (2) the government fails to cite a single line of his testimony that can be proven factually incorrect.

Not only should the Court grant Sargent's Rule 29 motion for judgment of acquittal, but it also should state that it would grant Sargent's Rule 33 motion for a new trial in the alternative.

3.  **The Verdicts Were Inconsistent and The Court Should Act**

The government's response brief acknowledges that the Supreme Court's holding in *United States v. Powell,* 469 U.S. 57, 65, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984) is not binding on every situation involving inconsistent verdicts. *See United States v. Pisman*, 443 F.3d 912 (7th Cir. 2006). Moreover, the government has failed to cite a single case on all fours with this case – where one defendant was acquitted and the other convicted based on the exact same

evidence, theory, and jury instructions. Indeed, as noted in his opening brief, Sargent has been unable to locate one either. R. 101 at 31.

Instead, the thrust of the government's argument is that it is somehow possible to reconcile the jury's verdicts. In so arguing, the only theories the government can come up with is that the jury may have found that Sargent acted willfully, but Klundt did not, or that Sargent knew that the Internet would be used "in the ordinary course of business" but Klundt did not. R. 105 at 41; R. 80 at 21. However, these theories fail to hold water. With respect to the willfulness argument, Sargent was also convicted on Counts Five through Seven of the indictment, based on a misappropriation theory that did not require a finding of willfulness; so the jury could not have thought that Sargent acted willfully but Klundt did not. R. 80 at 22. The same is true with respect to the government's second theory – the jury instructions on Counts Five through Seven did not require a finding that either defendant used the internet, so this theory cannot reconcile the inconsistent verdicts. Moreover, the government presented one theory on the use of the Internet at trial with respect to both Defendants, and it is implausible to believe that Klundt, a sophisticated investor did not know how modern-day trading uses the internet "in the ordinary course of business."

Given that these are the only arguments that the government has made in an attempt to reconcile the jury's verdicts, the only logical conclusion is that

the verdicts were irrational, illogical, and arbitrary. The Court can and should act when verdicts are truly irreconcilable. *United States v. Lawrence*, 555 F.3d 254, 263 (6th Cir. 2009); *United States v. Evans*, 486 F.3d 315 (7th Cir. 2007). For these reasons, the Court should overturn the inconsistent verdicts and enter a finding of not guilty on the remaining counts.

4. **The Government's Cross Examination and Argument About Defendant Sargent's Failure to Perform Research Into the "Riskiness" of his Chegg Trades Was an Impermissibly Commented on Right to Remain Silent, Requiring a New Trial**

The government argues that its decision to cross examine a defense expert about what evidence Sargent provided to that expert is entirely permissible and not a comment on Sargent's failure to testify or produce evidence. This is incorrect.

The government called an expert witness, Kevin Barrett, whose primary purpose was to testify that the trades Sargent conducted were risky. R. 86 at 532-33, 554; R. 87 at 614. It was Barrett's opinion based on Barrett's analysis that the trades were particularly risky because Chegg stock had to appreciate by 9% percent after the earnings call for Sargent's trading positions to break even. R. 87 at 597. Conversely, defendant called an expert witness, Dr. Joseph Jinmoon Bernstein, to testify, based on the same information, that it was his opinion that the trades were not risky. R. 93 at 1150. He also concluded that the fact that Chegg's price went up approximately 20 percent after the

12

earnings call was not abnormal, and that average increase after the last 12 earnings calls was 8.2%. R. 93 at 1145-46; R. 101 at Exh. 3.

Sargent called Dr. Bernstein as a witness simply to rebut the government's expert's premise on riskiness. On direct examination, Dr. Bernstein was not asked a single question about what Sargent did or did not know, or what types of information Sargent did or did not review. In fact, Dr. Bernstein had not met or spoken to Sargent (a part time attorney and novice investor); that was not the point of Dr. Bernstein's testimony. Dr. Bernstein was not testifying about whether Sargent knew or thought these trades were risky. Rather he was testifying about whether the mix of trades Sargent executed was risky, regardless of who the person was making the trades. R. 93 at 1122. Nonetheless, the primary, if not only, focus of the government's cross examination was to point out that Dr. Bernstein did not know whether Sargent had not conducted any risk analysis. R. 93 at 1162-63. The government doubled down on this argument in its closing. R. 94 at 1269-70. By focusing on this argument, the government was directly commenting on Sargent's failure to produce evidence either to his expert or to the jury, both of which are an impermissible comment on his right to remain silent. The only way Sargent could have produced evidence about what research he did was by testifying – any other attempt to admit that evidence would have been hearsay.

None of the cases the government cites show the opposite. *See United States v. Kelly*, 991 F.2d 1308 (7th Cir. 1993) (government commenting on defendant's failure to cross examine a particular witness is fine). As such, the Court must reverse Sargent's conviction and remand this case for a new trial.

5. **Venue Was Improper**

The government first argues that Sargent waived his ability to challenge venue by failing to make a pretrial motion. This is incorrect. Fed. R. Crim. P. 12(b)(3)(A)(i) only requires a defendant to raise the issue of venue pretrial "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." In this case, despite the government's theory being that Klundt tipped Sargent on May 1, 2020 and Sargent traded on the same day, the indictment alleged that the conspiracy began "in or about April 2020" and concluded "no later than September 2020." R. 1. Given this amorphous and lengthy time frame, Sargent had no basis to conclude that the government lacked venue until hearing the entirety of the government's evidence. Indeed, Sargent had little idea what the government's theory of venue might be. Courts routinely allow defendants to challenge venue on appeal without first raising it in a pretrial motion. See, e.g., *United States v. Tingle*, 183 F.3d 719, 726-27 (7th Cir. 1999). None of the cases the government cites shows the opposite. *See United States v. Knox*, 540 F.3d 708

(7th Cir. 2008) (face of the indictment alleged that crime took place in Africa, and not Chicago, and thus venue problem was obvious).

The government, citing *United States v. Ringer*, 300 F.3d 788, 790 (7th Cir. 2002), also argues that Sargent was required to make a venue objection at the conclusion of the government's case to preserve the issue. Again, the government is incorrect. In *Ringer*, the Seventh Circuit held: "A claim of improper venue is *waived if the issue is apparent on the face* of the indictment and an objection is not made before the close of the government's case." *See also United States v. Brandon,* 50 F.3d 464, 469 (7th Cir.1995); *United States v. John,* 518 F.2d 705, 708 (7th Cir.1975). Again, the issue was not apparent on the face of the indictment, so Sargent was not mandated to make a motion prior to the close of the government's case. *Brandon* at 709 ("If it is not obvious from the indictment, then it can be raised as a [post-trial] motion for acquittal.").

Last, the government argues that since Mr. Primer was located in Chicago and Mr. Primer executed the trades in question, venue in Chicago is satisfied. R. 105 at 48. This is incorrect. As an initial matter, the government does not dispute that the trial evidence showed that Klundt was in California and Minnesota at all relevant times and that Sargent was in Florida at all relevant times. Mr. Primer was an uncharged individual that the government considered a witness and not an unindicted co-conspirator (note, the

15

indictment does not allege that "individuals unknown" to the grand jury participated in the conspiracy). *See* R. 1. As such, any actions that Mr. Primer took are "ancillary" and similar to those described in *Tingle*, 183 F.3d at 726-27, which the Seventh Circuit found insufficient to establish venue. Thus, this indictment in this case must be dismissed.

## Conclusion

For the foregoing reasons, the Court should grant Sargent's Rule 29 Motion and acquit him of the remaining charges, or, in the alternative, grant a new trial pursuant to Rule 33.

Dated: May 11, 2023

Respectfully submitted,

/s/ Christopher Grohman
Christopher T. Grohman
cgrohman@beneschlaw.com
Benesch, Friedlander, Coplan & Aronoff LLP
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606-4637
(312) 212-4943

/s/ Carly Chocron
Carly A. Chocron
cchocron@taftlaw.com
Taft Stettinius & Hollister LLP
111 East Wacker, Suite 2600
Chicago, Illinois 60601-4208
(312) 836-4158

*Counsel for David Sargent*